UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Aniano Torres-Mendez,
     Petitioner

     v.                                Case No. 09-cv-214-SM
                                                Opinion No. 2011 DNH 016

Warden, New Hampshire State Prison,
     Respondent

**O R D E R**

In May of 2008, Aniano Torres-Mendez was convicted of arson by a New Hampshire jury. The trial court sentenced him to serve two and one-half to five years in prison, concurrent with a two and one-half to five year sentence on a probation violation.[1] The State then sought review of Torres-Mendez's sentence with the Sentence Review Division, and Torres-Mendez appealed his conviction to the New Hampshire Supreme Court.

In May of 2009, the state supreme court affirmed Torres-Mendez's conviction and, later that year, the Sentence Review Division modified his sentence, changing it to a period of incarceration of two to seven years on the arson conviction, and

---

[1]    It appears that Torres-Mendez was previously convicted of assaulting the woman who was the victim of his arson. And, as a condition of probation, he was ordered not to have any contact with her. He violated that condition when he telephoned her and threatened that she "was going to die burnt," Trial Transcript, Volume 1, at 141, and later started a fire outside her front door (i.e., the conduct giving rise to the arson charge).

making it <u>consecutive</u> to the sentence imposed on the probation violation.  Torres-Mendez now seeks federal habeas corpus relief, asserting that: (1) the State introduced insufficient evidence at trial to support the jury's guilty verdict; and (2) by increasing his sentence, the Sentence Review Division violated his federally protected right to due process, as well as his right not to be put in jeopardy twice for the same offense.

The State denies that any of Torres-Mendez's constitutional rights were violated in connection with his trial and sentencing, and moves for summary judgment.  For the reasons discussed below, the State's motion is granted.

## Standard of Review

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  And, a habeas petitioner seeking relief under that provision faces a substantial burden

insofar as "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 399 (2000).  The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.  The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> The most important point is that an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law . . . . Under

3

> § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original). In fact, even when a state court has summarily rejected a petitioner's federal claim without any discussion at all, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, __ U.S. __, 2011 WL 148587 at *9 (Jan. 19, 2001).  Under those circumstances - that is, when "a state court's decision is unaccompanied by an explanation," - the habeas petitioner still bears the burden of

"showing there was no reasonable basis for the state court to deny relief."  Id.

Only as to federal claims that were not adjudicated on the merits by the state court, will this court apply the more petitioner-friendly de novo standard of review.  See, e.g., Clements v. Clarke, 592 F.3d 45 52 (1st Cir. 2010) ("In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA.  When presented with such unadjudicated claims, the habeas court reviews them de novo.")  (citation omitted).

With those principles in mind, the court turns to Torres-Mendez's petition and the State's motion for summary judgment.

**Discussion**

I.  Sentence Review, Due Process, and Double Jeopardy.

Although Torres-Mendez raised his due process and double jeopardy claims before the state supreme court in a "Petition for Original Jurisdiction," the court denied the petition without addressing its merits.  See Petition of Torres-Mendez (document no. 34-3).  Those claims are, then, subject to de novo review.

Under New Hampshire law, after the trial court has imposed sentence upon a defendant, either the defendant or the State may seek review of that sentence by the Sentence Review Division.

> Any person sentenced to a term of one year or more in the state prison, except in any case in which a different sentence could not have been imposed, or the state of New Hampshire, may file with the clerk of the superior court for the county in which the judgment was rendered an application for review of the sentence by the review division.  The application may be filed within 30 days after the date the sentence was imposed, but not thereafter except for good cause shown.  The filing of an application for review shall not stay the execution of the sentence.

N.H. Rev. Stat. Ann. ("RSA") 651:58 I.  That statute also provides that the defendant shall be provided with both written and oral notice that, if sentence review is sought, it may result in "a decrease or increase of the minimum or maximum term within the limits fixed by law."  RSA 651:58 II.  It also provides that no member on the Review Division may sit in review of a sentence that he or she imposed.  RSA 651:57.

Here, Torres-Mendez received notice that the State had invoked the sentence review procedures, understood that his sentence might be decreased or increased by the Review Division, attended the Review Division's hearing on the matter, was afforded the opportunity to present evidence to a neutral and detached hearing body, and was provided with a written

6

explanation for the decision to adjust his sentence - that is,
"to punish [Torres-Mendez] for the significant history of
violence he has perpetrated against the same victim and to deter
him from committing future crimes against her."  Notice of
Amendment to Sentence (document no. 34-23) at 1.[2]


In light of the record before the court, it is plain that
Torres-Mendez's federal due process rights were not violated by
the New Hampshire Sentence Review Division.  See generally,
Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972) (discussing, in
an analogous situation, the requirements of procedural due
process).  To the extent he claims that the sentencing court or
the Review Division should have exercised its discretion and
ordered a pre-sentence investigative report from the State, he
fails to articulate what information, not already known to the
Review Division, such a report would have provided.  This is
particularly true since he was given the opportunity to testify
before the Review Division and, therefore, was able to share with

---

[2]     As described in the State's memorandum, Torres-Mendez
has a lengthy and violent history with his victim including, for
example, cutting her neck with a knife, unlawfully entering her
home, violating various restraining orders, breaking her shoulder
by twisting her arm behind her back, stabbing her left arm and
abdomen with a kitchen knife, choking her, and vandalizing her
property by breaking numerous personal items and by putting glue
in her locks.  Not surprisingly, she testified that she was "very
afraid" of Torres-Mendez and feared that he would escape from
prison and injure her again.  Sentencing Transcript at 14-15.
See also State's Memorandum (document no. 41-1) at 13-14.

it whatever information he deemed relevant and/or helpful to his case.[3]

Equally unavailing is Torres-Mendez's assertion that, when the Sentence Review Division adjusted his sentence, it violated his right not to be twice placed in jeopardy for the same offense.  As the Supreme Court has observed,

> The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence.  We have noted above the basic design of the double jeopardy provision, that is, as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent.  These considerations, however, have no significant application to the prosecution's statutorily granted right to review a sentence.  This limited appeal does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence.

United States v. DiFrancesco, 449 U.S. 117, 136 (1980).  See also United States v. Pimienta-Redondo, 874 F.2d 9, 16 (1st Cir. 1989) ("In the past decade, the Supreme Court has largely allayed any double jeopardy concerns attendant to resentencing after appeal. Criminal sentences do not possess the constitutional finality and

---

[3]    Parenthetically, the court notes that Torres-Mendez appears to mistakenly believe that he had a statutory (or perhaps even a constitutional) right to a pre-sentence report.  He did not.  Such reports are prepared for the benefit of the sentencing court, not the defendant.  And, in the exercise of its discretion, the court may waive preparation of a pre-sentence report.  RSA 651:4 I.

conclusiveness that attach to a jury's verdict of acquittal. Consequently, neither appellate review of sentences nor increases after appeal will ordinarily implicate double jeopardy considerations.") (citations omitted).

Plainly, then, neither Torres-Mendez's constitutionally protected right to due process nor his right not to be subjected to double jeopardy was violated when the Sentence Review Division lengthened his term of incarceration.

II.  <u>Sufficiency of the Evidence</u>.

As noted above, Torres-Mendez appealed his conviction to the New Hampshire Supreme Court, which addressed (and rejected) his claim that the State presented insufficient evidence to support the jury's guilty verdict.  <u>See</u> <u>State v. Torres-Mendez</u>, No. 2008-0552, slip op. (May 14, 2009) (document no. 39-4).  Accordingly, that claim is subject to AEDPA's deferential standard of review.

In reviewing Torres-Mendez's claim, the state supreme court noted that:

> In an appeal of the denial of a motion for a directed verdict based upon the sufficiency of the evidence, the defendant bears the burden of establishing that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt.  When we review the trial court's denial of a motion for a directed

verdict, we view the evidence and all reasonable
inferences arising therefrom in the light most
favorable to the State, even when the evidence
presented is solely circumstantial.

State v. Torres-Mendez, slip op. at 1 (citations omitted).  That

standard of review is at least as protective of a defendant's

rights as the one applicable under the federal constitution.

See, e.g., United States v. Medina-Martinez, 396 F.3d 1, 5 (1st

Cir. 2005).

In concluding that the State had introduced more than enough

evidence at trial to support the jury's guilty verdict, the state

supreme court observed:

The evidence presented included: (1) the defendant
told the victim the night before the fire that she
was "going to die burnt or [she] was going to get
burned"; (2) the defendant came to the victim's home
early on the morning of the fire and began banging on
the victim's door and yelling that she must be with
another man; (3) the defendant admitted setting a
newspaper on fire; (4) the defendant stated that he
lit the newspaper to keep warm; (5) the night
preceding the arson was a warm, humid night in July;
and (6) the defendant was seen by a neighbor in the
vicinity of the victim's home shortly before the
arson.

State v. Torres-Mendez, slip op. at 1-2.  Torres-Mendez has not

overcome the presumption that those factual findings by the state

court are correct, nor has he shown that the court's resolution

of his claim "resulted in a decision that was based on an

10

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). And, even if his sufficiency of the evidence claim were subject to de novo review, the outcome would be no different: the State plainly introduced sufficient evidence at trial to support the jury's unanimous conclusion that he was guilty of arson.

## Conclusion

For the forgoing reasons, as well as those set forth in the State's memorandum (document no. 41-1), Torres-Mendez's petition for a writ of habeas corpus (document no. 1) is denied. The State's motion for summary judgment (document no. 41) is granted.

Because Torres-Mendez has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. Petitioner may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b). See Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 28, 2011

cc:   Aniano Torres-Mendez, <u>pro</u> <u>se</u>
      Elizabeth C. Woodcock, Esq.
      NH Dept. of Corrections